[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter comes before the court on stipulated facts. No trial was held and the court was asked to render its decision after the submission of briefs by counsel.
The stipulation of facts provided as follows:
1. Judgment may enter in the amount of $1500 against the defendant, Aragi Enterprises, Inc., for items listed on a punch list.
2. A water test was performed and passed on January 19, 1995.
3. A certificate of use and occupancy was issued on January 25, 1995.
4. A well completion report was executed and filed with the Department of Consumer Protection.
5. The parties entered into a contract (Plaintiffs' Exhibit 1) dated September 20, 1994.
6. The closing took place on January 25, 1995, and the plaintiffs commented at that time on the color and odor of the water.
7. On February 8, 1995, a test was taken by Aquatek Labs (see Plaintiffs' Exhibit 2), which test revealed water problems with iron and manganese content in the water.
8. A test taken by Tarlton Environmental Laboratories (Plaintiffs' Exhibit 3) showed similar high iron and manganese content in the water.
9. The plaintiffs, in accordance with the contract, had a water treatment system installed. (Plaintiffs' Exhibit 4.)
10. The State of Connecticut Department of Public Health and Addiction Services performed a test of the well water on March 15, 1995. (Plaintiffs' Exhibit 5.)
11. On April 26, 1995, Aquatek performed two tests. One of CT Page 3289 "Raw Water" showed elevated levels of iron and manganese. (Plaintiffs' Exhibit 6.) The second test was of "Treated Water." (Plaintiffs' Exhibit 7.)
12. A letter was sent by Federick G. Adams, Commissioner of the Department of Health Services and Peter D. Galbraith to Leslie Carothers, Commissioner of the Department of Environmental Protection. This letter deals with the standards of manganese in drinking water. (Plaintiffs' Exhibit 8.)
13. A memorandum from Paul M. Schur, Director of Environmental Health to local directors of health and chief sanitarians, dated April 22, 1997. This memorandum deals with manganese and other components of water. (Plaintiffs' Exhibit 9.)
14. The plaintiff incurred a charge of $1976.90 from Wragg Bros. Well Drilling for the installation of a Jaswell seal in the well. This seal addressed the water problem. The bill is dated July 14, 1995. (Plaintiffs' Exhibit 10.)
15. Aquatek Labs performed a test dated June 23, 1995, which test is subsequent to the installation of the Durkin filter and the Jaswell seal. (See Plaintiffs' Exhibit 11.)
16. On April 17, 1995, Martha Wright, Sr. Sanitarian, sent a letter to Susan Aragi. (See Plaintiffs' Exhibit 12.)
17. The plaintiffs did not move into the subject premises July 8, 1995.
18. In connection with the water treatment, the plaintiffs' incurred the following expenses:
(a) Jaswell Seal — $1977
(b) Durkin Water Filtration System — $530
(c) Water Testing — $409
Total out of pocket costs for addressing well problems equals $5917.
19. In addition, from January, 1995, to July 8, 1995, plaintiff incurred the following additional expenses: CT Page 3290
(a) Mortgage $3488
(b) Utility Payments $654
(c) Taxes $379
Total: $4521
On August 15, 1997, subsequent to the above stipulations, the parties further stipulated as follows:
20. The defendant spent in excess of $5000 on the installation and completion of the well as of the date of closing. This amount fully exhausted the well allowance provided for in the contract of sale.
21. The plaintiff relied on the representations made in the contract concerning potable water.
The contract of sale provided that the defendant would construct a new home for the plaintiff in accordance with certain plans and specifications. The contract further provided that there would be an allowance of up to $5500 for a complete potable water system. The parties stipulated that the defendant spent in excess of the $5000 for the installation of the well.
The defendant appears to claim that since it spent all of the allowance and provided the plaintiff with a certificate of use and occupancy at the time of closing, it has no further responsibility. It has, thus, complied with the provisions of paragraph A8 of Schedule B.
Seller also relies on paragraph 12(b) as imposing upon the Buyer their obligation to pay for any expenses above the allowances. This is a rather simplistic approach to the problem. If the seller's analyses were to be applied strictly, then its obligation would cease after the expenditure of $5500 even if there was no potable water. The court submits that this is not what the language of the contract means. The obligation of the seller is to install a potable water system and if the buyer undertook the responsibility, then he or she would receive an allowance of up to $5500.
There is no question that immediately after the closing, water problems were identified which showed the water with too CT Page 3291 high a concentrate of manganese and iron.
The defendant has a statutory duty to provide a home fit for habitation at the time of delivery of the deed. The plaintiff is correct in his brief when he argues that the extension relied upon by the defendant is not applicable in this case.
The court does not find from the evidence that there was a negligent misrepresentation of the condition of the well. There was a satisfactory test taken several days prior to the closing. There is no question that Janice Rocha commented at the closing that the water appeared oily and odorous. The evidence does not, however, show that she asked to postpone the closing and was refused by the defendant. Surely, it should not fall upon the seller to have the burden of aborting a closing when a comment is made, but no further suggestions are forthcoming. The court cannot conclude that the seller knew or should have known of the condition at the time of closing. The evidence does not support such a conclusion.
The court concludes that the plaintiffs are entitled to recover from the defendant the sum of $10,437 for its breach of statutory duty to provide a home fit for habitation.
The court does not find, from the evidence presented, any CUTPA violation.
Judgment may enter for the plaintiffs in the amount of $10,437.98.
Mihalakos, J.